# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| DANIEL L. POHLE, and OTTER CREEK TRADING COMPANY, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 4:17-cv-00078-TWP-DML |
| CRAIG MITCHELL, PAUL MITCHELL, and WILLIAM MOSS, | ) ) ) ) |
| Defendants. | ) |

## **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on Motions to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) by Defendants William Moss ("Moss"), Paul Mitchell, and Craig Mitchell (collectively, "Defendants") (Filing No. 19; Filing No. 24; Filing No. 26). In October 2014, Plaintiffs Daniel L. Pohle ("Pohle") and Otter Creek Trading Company, Inc. ("Otter Creek") (collectively, "Plaintiffs") were sued for breach of contract and conversion by PCM Enviro PTY Limited Partnership ("PCM"), an Australian company operated by Paul Mitchell and Craig Mitchell. That lawsuit was filed in the Jennings County (Indiana) Superior Court. In June 2015, PCM was granted default judgment against the Plaintiffs. After being denied numerous requests for relief from the default judgment and losing on appeal at the Indiana Court of Appeals, the Plaintiffs filed the instant lawsuit against the Defendants, alleging fraudulent civil conspiracy both prior to and during the state court proceedings. The Defendants filed Motions to Dismiss, asserting lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, lack of personal jurisdiction, and failure to state a claim. For the following reasons, the Court **grants** the Defendants' Motions to Dismiss.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of the Plaintiffs as the non-moving parties. *See Bielansky v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Otter Creek is an Indiana corporation that manufactures and sells lead smelting equipment. It has operated for approximately twenty-five years in Jennings County, Indiana. It ships its lead smelting equipment internationally. Pohle operates Otter Creek and is its sole shareholder. He has extensive experience shipping lead smelting equipment internationally having shipped more than one hundred pieces of equipment to thirty different countries (Filing No. 1 at 2–3). Paul Mitchell and Craig Mitchell are citizens of Australia, and they operate PCM. *Id.* Moss is a citizen of Wisconsin. *Id.* at 2.

In July 2014, Plaintiffs entered into a contract with PCM for the sale of a lead smelter. *Id.* at 3. Otter Creek's invoice noted that the lead smelter would not be released to anyone other than an international shipper because of liability concerns and to protect intellectual property rights. *Id.* at 3–4. Around that same time PCM purchased a machine belt, which was shipped to Plaintiffs. PCM arranged to have the belt shipped to the Plaintiffs, who agreed to then ship the belt with the smelter to PCM in Australia via international shipper HTX International (Filing No. 1 at 6; Filing No. 25 at 2; Filing No. 37 at 3–4). PCM made the final payment on the smelter in July 2014 (Filing No. 25-11 at 161).

Ultimately, PCM arranged to have Moss retrieve both the smelter and the belt from the Plaintiffs and ship them to PCM in Australia. In September 2014, Moss arrived in Indiana to pick up the equipment from Pohle (Filing No. 1 at 5; Filing No. 37 at 3). However, when Pohle realized

Moss was in the lead reclamation business and Moss told him that he would keep the smelter for a few months before delivering it to PCM, Pohle refused to turn over the smelter to Moss fearing that Moss and PCM were trying to steal his intellectual property. Pohle retained possession of the belt and smelter. *Id.*

Around this same time, Pohle became concerned about the identity of the individual or entity in Australia with whom he was dealing. In early July 2014, Pohle conducted an entity search and could not find an entity called PCM in Australia. Pohle also asked Craig Mitchell to verify his identity through the United States Embassy in Australia. Craig Mitchell initially refused but later sent a copy of his new passport. Because the passport was new, Pohle's suspicion surrounding the transaction grew. Pohle retained possession of the smelter, belt, and PCM's payments ([Filing No. 37 at 5](#)–6).

In October 2014, PCM brought suit against Plaintiffs in the Jennings County Superior Court for breach of contract and conversion ([Filing No. 25-4](#)). By February 2015, the Plaintiffs had not filed an answer to PCM's complaint, although they had submitted correspondence to the court ([Filing No. 25-2 at 2](#)–3). On February 5, 2015, PCM filed a motion for default judgment. Between February 26 and May 26, 2015, the Plaintiffs filed eight different motions to dismiss, all of which were denied. Default judgment was entered against the Plaintiffs. A damages hearing was held. The state court awarded PCM actual damages, punitive damages, and lost profits in the amount of $146,537.80. *Id.* at 3–8; [Filing No. 25-5](#). After this judgment was entered, the Plaintiffs filed a motion to correct errors and to set aside the default judgment in the state trial court, arguing that PCM made fraudulent representations to the court in its filings and during the damages hearing ([Filing No. 1 at 4](#)–6; [Filing No. 25-6](#)). This motion was denied, so the Plaintiffs appealed the decision to the Indiana Court of Appeals ([Filing No. 25-2 at 9](#)).

3

The Indiana Court of Appeals upheld the trial court's judgment in favor of PCM and against the Plaintiffs. The appellate court affirmed both the default judgment and denial of the Plaintiffs' post-judgment motions. *Otter Creek Trading Co. v. PCM Enviro PTY, LTD*, 60 N.E.3d 217 (Ind. Ct. App. 2016). The appellate court addressed the Plaintiffs' claims that PCM had made fraudulent representations to the court, explaining that the evidence favored PCM and in any event the purported misrepresentations would not have led to a different outcome in the trial court. *Id.* at 227–29.

The Plaintiffs filed additional post-appeal motions and a motion to set aside judgment in the state trial court, attempting to avoid the default judgment and damages award against them. However, each of these motions were denied ([Filing No. 25-2 at 10](#)–14). While the post-appeal motions were being litigated in state court, the Plaintiffs filed their Complaint in this Court against Craig Mitchell, Paul Mitchell, and Moss on April 28, 2017, alleging fraudulent civil conspiracy ([Filing No. 1](#)). The Plaintiffs' claim is based on the Defendants' alleged misrepresentations to the state trial court as well as representations made to the Plaintiffs during their transactions involving the smelter. Specifically, the Plaintiffs allege that the Defendants fraudulently conspired to gain control of the Plaintiffs' lead smelting equipment in order to infringe on the Plaintiffs' intellectual property rights. Then they fraudulently sued the Plaintiffs when they were unsuccessful in obtaining the smelting equipment, and they made fraudulent representations to the state courts while litigating that action. *Id.* at 4–6.

In response to the Plaintiffs' Complaint, the Defendants each filed their Motions to Dismiss, asserting various grounds for dismissal. They each argue that subject matter jurisdiction does not exist based on the *Rooker-Feldman* doctrine and because the amount in controversy does not exceed $75,000.00. They additionally argue that the Complaint fails to state a claim and also

4

does not provide sufficient factual allegations for a claim based on fraud. Paul Mitchell and Craig Mitchell also assert that the Court lacks personal jurisdiction over them.

## II. LEGAL STANDARD

For the purposes of a motion to dismiss under Rules 12(b)(1), 12(b)(2), or 12(b)(6), district courts accept all well-pleaded factual allegations as true and construe all reasonable inferences in the plaintiff's favor. *See Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A Rule 12(b)(1) or 12(b)(2) motion challenges federal jurisdiction, and the party invoking federal jurisdiction bears the burden of establishing the elements necessary for jurisdiction. *Scanlan*, 669 F.3d at 841–42. In ruling on a motion under Rule 12(b)(1), district courts may look beyond the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint; a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (citations and quotation marks omitted). Although detailed factual allegations are not required, the complaint must allege sufficient facts "to state a claim to relief that is plausible on its face" and which "allows the court to draw a reasonable inference that the defendant is liable for the misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

As noted above, the Defendants argue dismissal of this action is appropriate because of a lack of personal jurisdiction, the failure to state a claim, the failure to plead sufficiently specific allegations for a fraud claim, and a lack of subject matter jurisdiction based on the amount in controversy and the *Rooker-Feldman* doctrine. The Court will address the parties' *Rooker-Feldman* arguments because this doctrine is dispositive and prevents the Court from exercising jurisdiction over this action even if the Plaintiffs had satisfied the requirements of diversity jurisdiction and personal jurisdiction.

The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging state court judgments rendered before the federal district court proceedings commenced. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The goal of the doctrine is to ensure "lower federal courts do not exercise appellate authority over state courts." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017). "Claims that directly seek to set aside a state-court judgment are *de facto* appeals that trigger the doctrine." *Id*. When a lower court considers whether *Rooker-Feldman* bars an exercise of its jurisdiction over a case, "[t]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Zurich Am. Ins. Co. v. Superior Court for Cal.*, 326 F.3d 816, 822 (7th Cir. 2003). "If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction." *Id.*

The Defendants assert that the *Rooker-Feldman* doctrine bars the Plaintiffs' federal litigation because this litigation is a direct challenge to the state court judgment against the Plaintiffs. The injuries alleged in this case are a direct result from the adverse state court judgment,

and without that judgment, the Plaintiffs would have no purported injury. The Defendants point out that allegation after allegation in the Complaint discusses the state court proceedings, and the primary amount of damages claimed in this case is the dollar amount of the damages award from the state court judgment. The Defendants further explain that the very allegations of fraud asserted in this case were previously raised in the state trial and appellate courts and were rejected there. The Defendants argue that the Plaintiffs are now asking this Court to second guess the Indiana courts' resolution of those issues. Thus, they assert, the *Rooker-Feldman* doctrine has direct application to this case, there is no subject matter jurisdiction, and the case must be dismissed.

The Plaintiffs allege that they have been harmed by the Defendants' fraud leading up to the state court proceedings and during the state court proceedings. They assert that their damages in this case can be measured by the damages award entered against them in the state court judgment, the damage to their reputations from the state court judgment, and the costs of bringing this federal litigation ([Filing No. 37 at 8](); [Filing No. 40 at 7]()–8).

Before addressing the Plaintiffs' specific arguments about the *Rooker-Feldman* doctrine, the Court first notes that all three "measures of damages" in this case are a direct result of and arise from the state court judgment. Without the state court judgment, the Plaintiffs would not have incurred the "damages" from the judgment itself and would not have suffered any alleged harm to their reputations arising from the judgment. Additionally, they would not have initiated this federal litigation if they had not incurred the alleged damages from the state court judgment, and thus, the Plaintiffs' costs for pursuing this litigation also are a result of the state court judgment. *See, e.g., Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014) (plaintiff's claims were barred by *Rooker-Feldman* because the cost of litigating them was "not a loss independent of the state court's decision"). Therefore, the injuries the Plaintiffs complain of in federal court cannot be "separated

from [the] state court judgment," and *Rooker-Feldman* is properly invoked by the Defendants to prevent the Court from exercising jurisdiction over this case. *Mains*, 852 F.3d at 675.

The Court will briefly address the Plaintiffs' arguments against application of the *Rooker-Feldman* doctrine. The Plaintiffs focus most of their argument on advancing the same arguments they presented to the state trial and appellate courts—*i.e.*, the facts presented by the Defendants about their business entities are false. The Plaintiffs provide additional facts surrounding their interactions with Moss and Craig Mitchell. However, as the Defendants correctly point out, these very allegations of fraud were previously raised in the state trial and appellate courts and were rejected by those courts. The Plaintiffs' continued reliance on the same arguments and facts further supports the Court's conclusion that the Plaintiffs are simply trying to seek this Court's review of the state court judgment. This is not permitted under the *Rooker-Feldman* doctrine.

The Plaintiffs assert that they are not seeking to "retry" the damages hearing and the resulting judgment from the state court. However, in the following paragraph, the Plaintiffs assert that the judgment for damages from the state court was $146,537.80, and thus, the amount in controversy requirement for diversity jurisdiction is satisfied ([Filing No. 37 at 7](#)–8). They further assert that their business reputation has been damaged by the state court judgment. These conflicting statements undermine the Plaintiffs' position that this federal litigation is not a challenge to the state court judgment. The Court further notes that many of the allegations in the Complaint explicitly discuss the state court proceedings. It is clear to the Court that this case is a challenge to the state court judgment brought by the losing party in the state court.

Plaintiffs argue that the Defendants in this case were not a party to the state court action, and the issues raised in this case were never part of the state court's default judgment and were not decided on the merits. They assert that their claim in this case is an independent cause of action

8

separate from the state court judgment. As noted above, the issues raised in this matter were presented to the state courts by the Plaintiffs and were rejected by those courts. Additionally, the only injuries alleged here arise directly out of the state court judgment. Furthermore, the Seventh Circuit has explained that a claim in federal court might be so "inextricably intertwined" with the state court judgment that *Rooker-Feldman* will be triggered, even when the plaintiff's claim merely relates to the state court judgment but was not raised before the state court. *Zurich Am. Ins.*, 326 F.3d at 823. That the Plaintiffs might be raising some additional facts that were not presented to the state courts does not avoid the application of the *Rooker-Feldman* doctrine.

Regarding the Plaintiffs' concern that the Defendants in this case were not named parties involved in the state court action, the Supreme Court explained, "we have held *Rooker-Feldman* inapplicable where the *party against whom the doctrine is invoked* was not a party to the underlying state-court proceeding." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (emphasis added). However, in this case, the *Rooker-Feldman* doctrine is not being asserted against the Defendants. Rather, it is being invoked against the Plaintiffs who were parties to the underlying state court proceedings. The Court concludes that the *Rooker-Feldman* doctrine applies to this case, and it lacks subject matter jurisdiction to hear this matter.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Moss' Motion to Dismiss ([Filing No. 19](Filing No. 19)), Paul Mitchell's Motion to Dismiss ([Filing No. 24](Filing No. 24)), and Craig Mitchell's Motion to Dismiss ([Filing No. 26](Filing No. 26)), and this action is **dismissed for lack of jurisdiction**. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 3/21/2018

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Wilmer E. Goering, II
GOERING LAW LLC
wg.goeringlaw@gmail.com

Greg S. Morin
MONTGOMERY, ELSNER & PARDIECK, LLP
gmorin@meplegal.com

Ann Crandall Coriden
CORIDEN GLOVER, LLC
acoriden@coriden.com